IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DANA DALE PERRY,

      **Plaintiff,**

                            Civil Action 2:18-cv-00117
                            Judge James L. Graham
v.                     Chief Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF SOCIAL SECURITY,

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Dana Dale Perry ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Disability Insurance benefits ("SSDI") and Supplemental Security Income benefits ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 15), Plaintiff's Reply (ECF No. 16), and the administrative record (ECF No. 9). For the following reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

        **I.**        **BACKGROUND**

Plaintiff applied for disability benefits on July 2, 2014, and supplemental security income on July 22, 2015. (R. at 165-80.) Plaintiff's applications were denied initially and upon reconsideration. (R. at 105-08.) Upon request, a hearing was held on March 27, 2017, in which Plaintiff, represented by counsel, appeared and testified. (R. at 35-75.) A vocational expert and

a medical expert also appeared and testified at the hearing. (*Id.*) On June 5, 2017, Administrative Law Judge Jeffrey Hartranft (the "ALJ") issued a decision finding that Plaintiff was not disabled at any time after March 1, 2014, the alleged onset date.[1] (R. at 12-31.) On January 9, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.) Plaintiff then timely commenced the instant action.

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony

At the March 2017 administrative hearing, Plaintiff testified that he was about 6' 3" and weighed about 300 pounds. (R. at 50.) Plaintiff further testified that he was not married and did not have any children. (*Id.*) Plaintiff stated that he lives with his mother who has "total renal failure," and "nephrostomy tubes that have to be flushed every other day and changed . . . every six weeks by an outpatient procedure." (R. at 51.) Plaintiff testified that he helps care for his mother "in certain aspects" but nothing "too elaborate." (*Id.*) In explaining the "certain aspects," Plaintiff testified that he is "there for company" and "if she has a problem where she falls or something like that" he helps her with that. (*Id.*) Plaintiff further testified that his mother does "bathing, dressing, [and] things like that" on her own. (*Id.*)

Regarding education, Plaintiff stated that he has a bachelor's degree in public relations, specifically advertising. (R. at 51-52.) Plaintiff further stated that he started school in 1998 and graduated in June 2004. (R. at 54.) Plaintiff testified that at some point he was both working and going to school in 200, but he had a nervous breakdown in February 2000 and "under [his] doctor's orders they said it was school or work, but not both," so he returned to school in

---

[1] Plaintiff alleged March 1, 2014 to be the onset of his disability for both of his applications.

September 2001.  (*Id.*)  Plaintiff testified that after finishing school in 2004 he did not work until 2011 because of "consistent flare ups and [his] depression."  (*Id.*)  Plaintiff testified that he was having trouble locating a job at that time, "and that progressively made things much worse for [him]."  (*Id.*)

Plaintiff testified that he began working at Nationwide on January 10, 2011 and worked there until February 2014.  (R. at 52, 54.)  Plaintiff further testified that he was on short term disability from February 2014 to May 2014 when he was terminated.  (R. at 52.)  Additionally, Plaintiff stated that he appealed his termination and ended up with an extra month of short-term disability, so he was officially terminated in June 2014.  (*Id.*)  While employed at Nationwide, Plaintiff testified that he worked as a policy services and building specialist and he "would take phone calls from members that needed to change their insurance policies or had billing questions."  (*Id.*)

Plaintiff testified that he left Nationwide because "when [he] found out about [his] mother's illness she was . . . the only parent [he'd] ever known" and "there were also some changes in the work setting, it became kind of more stress than [he] was able to process at any given one time and they started getting on [him] at work about frequent bathroom breaks."  (R. at 53.)  Furthermore, Plaintiff testified that his "stomach condition just tethered to [his] emotions."  (R. at 54.)

Regarding the problems that keep him from working, Plaintiff testified that he has "tolerable" days and "horrible" days, with the "horrible" days happening probably four or five times a week.  (R. at 56.)  He further testified that on "intolerable days" he doesn't want to be himself and he "would hate for anybody else to be [him]."  (*Id.*)  He also stated that on "intolerable" days he cannot think clearly or motivate himself to do anything.  (*Id.*)  Plaintiff

3

further stated that he can go three or four days without bathing because he "cannot bring [himself] to do it." (*Id.*) Additionally, Plaintiff stated that he "just cannot fathom being in the outside world during these times." (*Id.*) On "tolerable" days Plaintiff testified that he "pretty much get[s] in the shower and [goes] to wherever [he] need[s] to go." (R. at 58.)

Plaintiff testified that he is not able to do simple tasks because then he is alone with his thoughts and his mind "tends to focus on just about every bad thing that has ever happened to [him] and the darkest parts of [his] psyche tell [him] that it's justified." (R. at 60.) Plaintiff further testified to keep his mind off these thoughts he tries to keep himself as occupied as possible by "talking to somebody on the internet, watching a movie, playing a video game, [or] reading a book." (R. at 61.)

Regarding the treatment he receives for mental health issues, Plaintiff testified that he has a standing bi-weekly counseling session where he meets with a doctor for an hour and discusses various things he "should attempt to do [to] try to alleviate [his] isolationism or . . . the symptoms that [he] experience[s] on a day to day basis." (R. at 56.) Plaintiff also testified that he meets with a psychiatrist who currently has him on Cymbalta and wants him to do "some more comprehensive testing to find out why some of the medications she has attempted to use with [him] have not worked to her satisfaction." (R. at 56-57.)

### B. Vocational Expert Testimony

Hermona C. Robinson, Ph.D. testified as the vocational expert ("VE") at the March 2017 hearing. (R. at 67-74.) The ALJ ruled out past relevant work during the hearing and the VE testified that he agreed that Plaintiff could not perform his past work. (R. at 67.) The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE. (R. at 67-74.) Based on Plaintiff's age, education, and work experience, and the RFC

4

ultimately determined by the ALJ, the VE testified that Plaintiff could perform certain jobs, including packager, laundry laborer, and garment sorter. (R. at 68-69.)

If the hypothetical individual would require access to a bathroom as needed and they would be off task five percent of the work day, in addition to the usual breaks, the VE testified that the individual could still perform the jobs previously identified. (*Id.*) If the hypothetical individual were off task ten percent of the work day, in addition to the usual breaks, the VE testified that would be work preclusive. (R. at 70.) If the hypothetical individual could not climb ladders, ropes, or scaffolds, and would need to avoid workplace hazards such as unprotected heights and machinery, the VE testified that the individual could perform the jobs previously identified. (*Id.*)

The VE testified that generally, if an individual in an unskilled work position is absent one day or more per month it is considered work preclusive and there would be no jobs available. (*Id.*) The VE further testified that, generally, if an individual in an unskilled work position is off task ten percent or more of the work day it is considered work preclusive and there would be no jobs available. (*Id.*)

**C. Medical Expert Testimony**

Michael A. Lace, Psy. D. testified by phone as the medical expert ("ME") at the March 2017 hearing. (R. at 42-50.)[2] His testimony was limited to the record, and he did not consider Plaintiff's testimony as a basis for his opinions. (R. at 45.) The ME testified that he could identify that there was some basis for Plaintiff having the following impairments: major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder. (R. at 42-

---

[2] The hearing transcript refers to the ME as "Mr. Alicia." (*See e.g.,* R. at 42.) However, this appears to be a typographical error, as the ME's name is Michael A. Lace. (*See e.g.*, R. at 152 [Hearing Notice sent to Michael A. Lace], 558-62 [Curriculum Vitae for Michael A. Lace].)

43.) The ME further testified that the mental status exams throughout the record were "within normal limits." (R. at 44.) Additionally, the ME stated that in his opinion the Plaintiff's mental conditions, whether considered separately or in combination, do not meet or equal any of the listings. (*Id.*)

The ME further stated that the Plaintiff would have some functional limitations resulting from his mental impairments, including that the Plaintiff would be "limited socially to brief and superficial and occasional contact with coworkers, [and] the general public, as well as supervisors[.]" (R. at 45-47.) Additionally, the ME stated that Plaintiff would be limited to slow paced, simple, routine, repetitive tasks. (R. at 47.)

### III. OPINION EVIDENCE FROM PLAINTIFF'S MOTHER

Plaintiff's mother, Cora Reva Perry, provided a written statement dated February 20, 2017. (R. at 263-64.) This opinion evidence is the basis of Plaintiff's one assignment of error. (ECF No. 10.) Ms. Perry's letter reads as follows:

> To whom it may concern: My son Dana D. Perry was a strong healthy young adult. He was very intelligent, and hard working when he was employed at Nationwide. But when he took sick, they treated him bad. That led to mental health problems. Dana went to withdrawal, nervous, angrily and severe depression. He is so weak, and tired most of the time, he does very little around the home. He will try to do anything I ask of him. Most of the time he says mom I can't right now. He procrastinates a lot, and he has to sat [sic] down and rest when he carries in groceries. Dana is weak and shakey [sic] most of the time. So I don't ask him to do much, because it makes him worse. It hurts my heart to see a young intelligent young man loosing out on a lot of his life. I do everything I can to help him, but it is not doing much good. It is heartbreaking to see him walk and look so old and helpless, and not be able to do anything to help Dana. Things are getting behind around the home, with both of us being sick. Dana's nerves are very bad, and he has trouble controling [sic] his anger. Dana is so isolated, he will go for days without getting out of the house. His anxiety is so bad. He can't even visit friends, or go out to eat or movies. Dana is a very intelligent, nice looking, young man, with a lot of problems. These things is [sic] so pronounced they are causing him complete disability. It is so scary, and I know it bothers him a lot. He is gaining weight, and has no energy to do anything about it. He has to drop me off at the Hospital, and come back and pick me up, because he has to [sic] much anxiety to

6

go in with me. Dana needs help now, Social Security has waited to [sic] long, and Dana is really suffering. He is 38 years old, and feels much much older.

(R. at 263-64.)

## IV. ADMINISTRATIVE DECISION

On June 5, 2017, the ALJ issued his decision. (R. at 12-31.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2014, the alleged onset date. (R. at 17.) The ALJ found that Plaintiff has the following severe impairments: a major depressive disorder, an anxiety disorder, a post-traumatic stress disorder, a panic disorder with agoraphobia, a personality disorder, and irritable bowel syndrome. (*Id.*) He further found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18.)

At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

[Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the [Plaintiff]

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

7

> can perform simple, routine, and repetitive tasks involving only simple work-related decisions and few, if any, workplace changes. The [Plaintiff] can perform work that does not involve strict production quotas or fast-paced work (such as an [sic] on an assembly line). The [Plaintiff] can have occasional contact with the general public, coworkers, or supervisors (where there is no customer service, persuasion, or tandem tasks involved). Additionally, the [Plaintiff] requires access to a bathroom as needed, and he would be off task 5 percent of the workday.

(R. at 19.) The ALJ noted that in making this assessment, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929." (*Id.*) Additionally, he noted that he "also considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and 416.927" in making this assessment. (*Id.*)

The ALJ further noted and assessed Plaintiff's own claims regarding his symptoms. For instance, the ALJ noted that Plaintiff "testified he has several intolerable days a week" and that he "reported he struggled with depression, panic attacks, traumatic experiences, nightmares, and racing and tortured thoughts." (R. at 20.) Additionally, the ALJ noted that Plaintiff "did not like to leave the house[,]" "that he struggled to bring himself to bathe[,]" that "he has a hard time focusing as he tended to only think about the bad things that had happened to him[,]" and that "he has problems with irritable bowel syndrome and spends time in the bathroom as a result." (*Id.*) Regarding this evidence, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce some of the above alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.*)

The ALJ also discussed Plaintiff's allegations as reflected in the medical records. For example, the ALJ noted Plaintiff's reports of suicidal ideation,[4] a history of childhood bullying, sexual abuse, and that Plaintiff indicated he was caring for his terminally ill mother. (R. at 20-22.) In summing up the medical record, the ALJ found that other than one involuntary hospitalization, during a time when Plaintiff admitted he had not been taking his medication, there were "no significant mental status exam findings (other than some self-reports of increased depression and isolation and a depressed mood) that support greater limitations than those assessed herein." (R. at 22.) Furthermore, the ALJ noted that the medical evidence is sparse with respect to Plaintiff's irritable bowel syndrome, which is his only severe impairment in terms of physical conditions. (*Id.*) Additionally, the ALJ noted that "[i]n addition to considering the [Plaintiff's] objective medical evidence, [he] also considered the opinion evidence in evaluating the [Plaintiff's] residual functional capacity." (*Id.*)

The ALJ concluded that Plaintiff is unable to perform his past relevant work as an insurance clerk. (R. at 24.) Relying on the VE's testimony, the ALJ concluded that considering the demands of the Plaintiff's past relevant work with his RFC, the Plaintiff is not able to perform any of his past relevant work. (R. at 24-25.) The ALJ found that considering the Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 25.) He therefore concluded that Plaintiff was not disabled under the Social Security Act from March 1, 2014, through the date of the administrative decision. (R. at 26.)

---

[4] The ALJ points out that at one appointment Plaintiff denied suicidal ideation, instead claiming he meant he had experienced suicidal ideation in the past, while his psychiatrist misunderstood him and thought he was currently experiencing suicidal ideation. (R. at 20.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff puts forward one assignment of error. Plaintiff contends that the ALJ failed to properly weigh a written opinion from Plaintiff's mother, Cora Reva Perry. (ECF No. 10.) Social Security Ruling ("SSR") 06-03p suggests, but does not require, that an ALJ's opinion include a discussion regarding third-party opinions in the record. 2006 WL 2329939, at *6 (Aug. 9, 2006)[5] SSR 06-03p provides as follows:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from [third parties], or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id.* Indeed, SSR 06-03p does not contain a requirement that an ALJ discuss third-party opinions "in great detail or offer good reasons for rejecting them." *Kidd v. Colvin*, No. 1:13-cv-02224, 2014 WL 7238347, at *7 (N.D. Ohio, Dec. 17, 2014).

Furthermore, "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party; and an ALJ is not required to make explicit credibility findings as to each bit of conflicting testimony so long as his factual findings as a whole show that he implicitly resolved such conflicts." *Potter v. Colvin*, No. 1:14-cv-00144, 2015 WL 3486126, at *7 (N.D. Ohio, Jun. 2, 2015) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006)).

For instance, in *Cameron v. Comm'r of Soc. Sec.*, No. 1:15-cv- 169, 2016 WL 11431681, at *9 (E.D. Tenn., Apr. 12, 2016) the court concluded that the "opinions and testimony" of

---

[5] Effective March 27, 2017, SSR 06-03p was rescinded. 82 Fed. Reg. 15263-01 (March 17, 2017). However, because Plaintiff filed his claims prior to the effective date, SSR 06-03p still applies in the instant action.

11

Plaintiff's mother-in-law and cousin/roommate fell into the category of "other source" opinions and "cannot establish that a plaintiff has medical determinable impairments."[6] SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006.) The plaintiff in that case argued that the ALJ's failure to address the two opinions of his mother-in-law and cousin was a basis for reversal and remand. *Cameron*, 2016 WL 11431681, at *9. However, the court noted that an ALJ's failure to discuss such testimony in his opinion did not mean that the ALJ had failed to consider the testimony. *Id.* (citing *Thacker v. Comm'r of Soc. Sec.*, 99 Fed. App'x 661, 664-65 (6th Cir. 2004)). The court further noted that an ALJ is not required to discuss every third-party opinion when making a credibility determination. *Id.* (citing SSR 96-7p, 1996 WL 374186, at *2).[7] The court then held that the ALJ had properly considered the evidence in the record as a whole and that his credibility determination was supported by substantial evidence in the record. *Id.* Furthermore, where a third-party report, such as one from friends or family of the Plaintiff, "is inconsistent with the medical record, the Sixth Circuit Court of Appeals has found it sufficient for an ALJ to include an all-encompassing statement reflecting a full review and consideration of the evidence without making any specific reference to the third-party testimony." *Johnson v. Colvin*, No. 1:16-cv-00010, 2017 WL 9325630, at *6 (W.D. Ky., Jan. 10, 2017) (citing *Higgs v. Bowen*, 880 F.2d 860, 864 (6th Cir. 1988)).

---

[6] "Information from these 'other sources' cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

[7] *See also Thacker*, 99 Fed. App'x at 665 ("An ALJ need not discuss every piece of evidence in the record for his decision to stand.").

In the instant action, the ALJ properly noted in his decision that he carefully considered the entire record. (R. at 17.) Furthermore, he noted that he "also considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and 416.927." (R. at 19.) Specifically, the ALJ stated that "[i]n addition to considering the claimant's objective medical evidence, [he] also considered the opinion evidence in evaluating the claimant's residual functional capacity." (*Id.*) Therefore, the ALJ evinced that he had properly considered the evidence in the record as a whole, including the opinion evidence, of which Plaintiff's mother's letter would be part. *See, e.g.*, *Cahill v. Comm'r of Soc. Sec.*, No. 1:11-cv-2207, 2013 WL 331228, at *24 (N.D. Ohio, Jan. 8, 2013) ("[T]he ALJ did not err by failing to discuss and explain the weight he assigned third party reports [by Plaintiff's friends and family] which largely echoed Plaintiff's own reports and were largely inconsistent with the medical evidence and Plaintiff's daily activities."); *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 842 (6th Cir. 2005) ("Given the ALJ's lengthy discussion of the lack of objective evidence supporting [plaintiff's] claimed physical limitations, . . . the ALJ's failure to mention specifically the mother's letter is not reversible error.").

In the instant action, Plaintiff's mother's letter generally reflects his own claims and subjective complaints. The ALJ outlined numerous symptoms from which Plaintiff claimed to suffer, including having several "intolerable" days a week and "struggle[ing] with depression, panic attacks, traumatic experiences, nightmares, and racing and tortured thoughts." (R. at 20; *see also* R. at 54, 56-57, 59-60, 64.) Yet, the ALJ explained his reasons for discounting Plaintiff's claims based on the medical evidence and his decision is supported by substantial evidence. For instance, Plaintiff's medical examinations throughout the period at issue showed findings of normal mental status. (R. at 289-90, 299.) Furthermore, in April 2014, although Plaintiff exhibited a depressed mood, he was also cooperative, with no cognitive impairment, and

13

showed normal motor activity, speech, and thought processes. (*Id.*) The record is replete with other instances where Plaintiff demonstrated typical behaviors during examinations. (R. at 277, 283, 307, 309, 320, 378.) Plaintiff's claims, and by extension his mother's letter, are demonstrably inconsistent with the medical evidence. Because the ALJ explained his reasons for discounting the medical evidence, which is supported by substantial evidence, any failure to specifically mention Plaintiff's mother's letter is not reversible error.

Even if the ALJ did not properly evaluate Plaintiff's mother's letter, it was harmless error because the decision is well supported by the evidence of record. Generally, courts review decisions of administrative agencies for harmless error, therefore, "if an agency has failed to adhere to its own procedures, [it will not be remanded] for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) (citing and quoting *Connor v. United States Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983) (internal quotations omitted). Moreover, even if an ALJ's failure to explicitly assess a third-party opinion in his decision is erroneous, the error is harmless if Plaintiff fails "to identify how the outcome of his case would be different if the ALJ had assigned greater weight" to the third-party opinion. *Kidd*, 2014 WL 7238347, at *8. Here, Plaintiff has failed to come forward with any support for his supposition that the outcome of the case would have been different had the ALJ explicitly analyzed his mother's opinion.

"No principle of administrative law or common sense requires [that a case be remanded] in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)). Indeed, if "remand would be an idle and useless

14

formality," then a court is not required to "convert judicial review of agency action into a ping-pong game." *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (quoting *NLRB v. Wyman-Gordan Co.*, 394 U.S. 759, 766 n.6 (1969)). In the instant action, Plaintiff points to no medical evidence to support the opinions in his mother's letter, but simply argues that the ALJ failed to explicitly discuss the letter. As set forth above, the ALJ was not required to do so. *See King v. Berryhill*, No. 3:13-cv-0733, 2017 WL 3888449, at *7 (M.D. Tenn., Sept. 6, 2017) ("The ALJ is only required to give perceptible weight to the opinion of a third-party where it is supported by medical evidence.") (citations omitted) (internal quotations omitted).[8] Plaintiff's argument, therefore, is not enough to require remand.

Finally, Plaintiff cites to *Lohr v. Comm'r of Soc. Sec.*, 559 F. Supp. 2d 784, 793 (E.D. Mich., 2008) to support his contentions. In that case, the court remanded because the ALJ failed to consider or mention statements from two of the plaintiff's former supervisors. *Id.* This case, however, does not support Plaintiff's position in the instant action because the *Lohr* court concluded that the supervisors' statements affected the outcome of the case. *Id.* (citing SSR 06-03p 2006 WL 2329939, at *6 (Aug. 9, 2006) (while an adjudicator is not required, he "generally should explain the weight given to [third-party] opinions . . . *when such opinions may have an effect on the outcome of the case*.") (emphasis added)). In the instant action, Plaintiff does not assert that his mother's letter would have had any effect on the outcome of the case. Rather, he maintains that the ALJ failed to explicitly mention the letter in his decision. (ECF No. 10, at p. 8.) Furthermore, nothing in the ALJ's decision indicates that the mother's letter had or would

---

[8] In *King*, the court concluded that Plaintiff failed to point to any medical evidence to support a third-party opinion, and rather the opinion simply "mirror[ed] Plaintiff's claims of disabling symptoms." Therefore, the *King* court held that "to the extent the ALJ erred by failing to explicitly reference [the third-party opinion], the Court finds that such error is harmless." 2017 WL 3888449, at *7.

15

have had any effect on the outcome of the case.[9] Therefore, *Lohr* does not provide support for Plaintiff's argument.

The Undersigned finds, therefore, that the ALJ was not required to specifically address Plaintiff's mother's letter, constituting third-party opinion testimony, in his decision. Furthermore, even if this was an error by the ALJ, such error would be harmless, as the Plaintiff's mother's letter would not change the outcome of the ALJ's decision.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and

---

[9] This differs from the *Lohr* case, where the Court concluded that the supervisors' statements were significantly at odds with the ALJ's findings. 559 F. Supp. 2d at 793-94. Furthermore, the *Lohr* court found the supervisors' letters to be especially credible, since the supervisors had witnessed the plaintiff in a work setting. *Id.* In the instant action, Plaintiff is unable to make similar arguments.

16

waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: February 12, 2019	/s/ *Elizabeth A. Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
CHIEF UNITED STATES MAGISTRATE JUDGE